IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ACUITY, <br><br> **Plaintiff,** <br><br> v. <br><br> MARION GLASS AND MIRROR, INC., <br><br> **Defendant.** | Case No. 3:25-CV-00562-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Pending before the Court is a Motion for Default Judgment filed by Plaintiff Acuity. (Doc. 31). For the following reasons, the motion is granted.

## BACKGROUND

On April 15, 2025, Acuity, an insurance company, filed a Complaint for Declaratory Judgment seeking a declaration that it does not owe a duty to defend or indemnify its insured, Marion Glass and Mirror, Inc. ("Marion Glass"), with respect to a Third-Party Complaint filed by Samron Midwest Contracting, Inc. ("Samron") against Marion Glass in Williamson County ("the underlying lawsuit"). *See City of Marion v. Basinger Architects, LLC, et al.*, Case No. 2023 LA 52 (Williamson Cty. Cir. Ct.); (Doc. 1-1). The underlying lawsuit, filed in June 2023, seeks damages in connection with property damage resulting from alleged faulty construction work performed by Samron and Marion Glass at the City of Marion's Community Recreational Center. (Doc. 1-1).

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Plaintiff

Acuity is a mutual insurance corporation organized under Wisconsin law, with its principal place of business located in Sheboygan, Wisconsin; Defendant Marion Glass is an Illinois corporation with its principal place of business in Marion, Illinois; and the amount in controversy is alleged to exceed $75,000 exclusive of interest and costs. (Doc. 1).

### A. The Insurance Policy

This case concerns a commercial insurance policy (Policy No. ZH5256) issued by Acuity to Marion Glass. The policy was effective from December 30, 2020, to December 30, 2021. Several provisions are relevant here. First, the policy included occurrence-based Business Liability coverage. That portion of the policy provides:

> 1. Business Liability
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of *bodily injury, property damage* or *personal and advertising injury* to which this insurance applies. We will have the right and duty to defend the insured against any *suit* seeking those damages. However, we will have no duty to defend the insured against any *suit* seeking damages for *bodily injury, property damage* or *personal and advertising injury* to which this insurance does not apply . . . .
>
> b. This insurance applies:
> **(1)** To *bodily injury* and *property damage* only if:
> **(a)** The *bodily injury* or *property damage* is caused by an *occurrence* that takes place in the *coverage territory*; and
> **(b)** The *bodily injury* or *property damage* occurs during the policy period.
> **(c)** Prior to the policy period, no insured listed under item 1 of Who Is An Insured and no *employee* authorized by you to give or receive notice of an *occurrence* or claim, knew that the bodily injury or *property damage* had occurred, in whole or in part. If such a listed insured or authorized *employee* knew, prior to the policy period, that the *bodily injury* or *property damage* occurred, then any continuation, change or resumption of such *bodily injury* or *property damage* during or after the policy period will be deemed to have been known before the policy period.

(Doc. 1-3 p. 62).

> Second, the policy includes contractor Errors and Omissions coverage:
>
> 1. Insuring Agreement
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of a *wrongful act* to which this insurance applies. We will also pay those sums that the insured becomes legally obligated to pay as *recall expenses* only if the *recall expense* arises out of *property damage* to *your product, property damage* to or any part thereof. The *recall expenses* must have resulted from the insured's *wrongful act.* We will have the right and duty to defend the insured against any *suit* seeking damages or *recall expenses* to which this insurance applies. However, we will have no duty to defend the insured against any *suit* seeking damages for a *wrongful act* or *recall expenses* to which this insurance does not apply. We may at our discretion investigate any *wrongful act* or *recall expense* and settle any claim or *suit* that may result from a *wrongful act* or *recall expense* . . . .
>
> b. This insurance applies only if: . . .
>
> (2) The:
>   (a) *Wrongful act* occurs; or
>   (b) The *product recall* is initiated;
>   on or after the Retroactive Date shown in the Declarations and prior to the end of the policy period; . . .
>
> (3) Prior to the original inception date of continuous coverage under Contractors Errors and Omissions Broad Coverage Part no insured had knowledge of:
>   (a) A wrongful act or any resulting claim or suit, or
>   (b) Any suspected wrongful act which would result, or could have reasonably been expected to result in a claim or suit, which the insured had not reported to us as required by paragraph 2, Duties in the Event of a Wrongful Act, Product Recall, Claim or Suit under Section V, Conditions or paragraph 6, Representations, under Section V Conditions;
>
> whether or not any notice of such wrongful act, claim or suit was furnished to any other insurer; and
>
> (4) A claim is first made against any insured, in accordance with paragraph c below, during the policy period or during any Extended Reporting Period

we provide under Section VI – Extended Reporting Periods. . . .

(*Id.* at p. 152). The Errors and Omissions coverage also provides that "[t]his insurance does not apply to claims or damages if the wrongful act out of which the claim or damage arose or the product recall commences before" December 30, 2020. (*Id.* at p. 148).

Marion Glass also purchased Commercial Excess Liability coverage, which provided as follows:

> 1. Insuring Agreement
>    a. We will pay those sums, in excess of the amount payable under the terms of any *underlying insurance*, that the insured becomes legally obligated to pay as damages because of *injury* or damage to which this insurance applies, provided that the *underlying insurance* also applies, or would apply but for the exhaustion of its applicable Limits of Insurance . . . .

(*Id.* at p. 6). "Underlying insurance" is defined by reference to listing of policies in the package's "Schedule of Underlying Insurance." (*Id.* at p. 11). That schedule lists only an Automobile Liability policy, an Employers' Liability policy, and the Business Liability policy discussed above. (*Id.* at p. 4).

**B. The Underlying Litigation**

In June 2023, the City of Marion, Illinois, filed a lawsuit in state court against several entities, including Samron, who were involved in the construction of the community's natatorium. According to the City's complaint, construction began in July 2013 and was substantially completed in March 2015. Compl. ¶ 11. In the summer and fall of 2015, the natatorium "began exhibiting excessive condensation and corrosion and degradation to its steel structure and components." *Id.* ¶ 13. The City alleged that these issues arose in part from Samron's faulty work. *Id.* ¶ 14.

Samron then filed a third-party complaint in the underlying lawsuit against Marion Glass. *Id.* ¶ 15. It alleges that it contracted with Marion Glass for work on the natatorium project in 2013, but the work was faulty. *Id.* ¶¶ 16-17. Samron pleaded claims for contractual indemnity and breach of contract. *Id.* ¶ 17.

On November 20, 2024, Marion Glass tendered a claim for defense and indemnification to Acuity based on the third-party complaint. *Id.* ¶ 18. Acuity denied the tender on December 11, 2024. *Id.* ¶ 19. It requested that Marion Glass concede the denial, but Marion Glass has not done so. *Id.*

### C. Procedural History

Acuity filed a complaint in this Court on April 15, 2025, seeking a declaratory judgment that it does not have a duty to defend or indemnify Marion Glass with respect to Samron's third-party complaint pending in state court. Acuity named both Marion Glass and Samron as defendants.

Samron was served and promptly was dismissed from the case pursuant to Federal Rule of Civil Procedure 41(a). (Doc. 30). On June 25, 2025, Marion Glass was served with the summons and complaint by the Williamson County Sheriff's Office. (Doc. 19). Marion Glass did not timely answer or respond to the complaint, so on Acuity's request the Clerk of Court entered its default on July 30, 2025. (Doc. 25). On September 23, 2025, Acuity filed a motion for the entry of a default judgment against Marion Glass, which it also mailed to Marion Glass's registered agent. (Docs. 31, 32).

### LEGAL STANDARD

Rule 55(a) requires the clerk to enter default when a party against whom a

judgment for affirmative relief is sought has failed to plead or otherwise defend and that failure is shown by affidavit or otherwise. Fed. R. Civ. P. 55(a). The clerk's entry of a default "is merely a formal matter and does not constitute entry of a judgment." 10A Wright & Miller's Federal Practice and Procedure § 2682 (4th ed.). "Once the default is established, and thus liability, the plaintiff still must establish his entitlement to the relief he seeks." *VLM Food Trading Int'l, Inc. v. Illinois Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (quoting *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004)). "When ruling on a motion for default judgment, the Court "must accept as true all factual allegations in the complaint, except those regarding the amount of damages." *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 961 F.3d 942, 948 (7th Cir. 2020). "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *See* 10A Wright & Miller's Federal Practice and Procedure § 2688.1 (4th ed.).

## DISCUSSION

Acuity argues that the well-pleaded facts make clear that it has no duty to Marion Glass under the insurance policy's Business Liability coverage, Errors and Omissions coverage, or the Commercial Excess Liability coverage. The Court agrees.

Start with some first principles. As contracts, insurance policies are assessed using ordinary principles of contract interpretation. *Hobbs v. Hartford Ins. Co. of the Midwest*, 214 Ill. 2d 11, 17, 823 N.E.2d 561, 564 (2005); *see also Old Guard Ins. Co. v. Riverway Prop. Mgmt., LLC*, No. 23-01098, 2024 WL 4112781, at *4 (C.D. Ill. Sept. 6, 2024). A court's "primary objective is to ascertain and give effect to the intention of the parties, as

expressed in the policy language." *Hobbs*, 214 Ill. 2d at 17, 823 N.E.2d at 564 (citing *American States Ins. Co. v. Koloms*, 177 Ill. 2d 473, 479, 687 N.E.2d 72 (1997)).

Illinois law provides that "the insurer's duty to defend arises when 'the facts alleged in the underlying complaint fall within, or potentially within, the policy's provisions.'" *Berkley Ins. Co. v. Caraway*, No. 24-256, 2025 WL 3280220, at *5 (S.D. Ill. Nov. 25, 2025) (quoting *Mkt. St. Bancshares, Inc. v. Fed. Ins. Co.*, 962 F.3d 947, 951–52 (7th Cir. 2020)). An insurer's duty to defend is broader than its duty to indemnify. *See Bartkowiak v. Underwriters at Lloyd's, London*, 2015 IL App (1st) 133549, ¶ 20, 39 N.E.3d 176, 181 (Ill. App. Ct. 2015). For that reason, the duty "arises not just when the allegations of the underlying complaint "'fall within . . . the policy's coverage,' but also when those allegations 'potentially' fall within that coverage." *Great Am. Ins. Co. v. State Farm Fire & Cas. Co.*, 104 F.4th 1011, 1018 (7th Cir. 2024) (quoting *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 108, 607 N.E.2d 1204, 1212 (1992)). Furthermore, provisions in insurance policies that limit coverage are to be "interpreted liberally in favor of the insured and against the insurer." *Koloms*, 177 Ill. 2d at 479, 687 N.E.2d at 75.

Acuity bases its claim for declaratory relief on three provisions of the insurance policy. First, the Business Liability coverage required Acuity to "pay those sums that the insured becomes legally obligated to pay as damages because of *bodily injury, property damage* or *personal and advertising injury* to which this insurance applies." (Doc. 1-3 p. 62). The provision likewise required Acuity to "defend the insured against any *suit* seeking those damages." (*Id.*). However, this provision applies "only if . . . [t]he bodily injury or property damage occurs during the policy period" and prior to the policy period "no

insured listed under item 1 of Who Is An Insured and no *employee* authorized by you to give or receive notice of an *occurrence* or claim, knew that the bodily injury or *property damage* had occurred, in whole or in part." (*Id.*). Here, the policy became effective on December 30, 2020. (*Id.* at p. 3).

Accepting as true the facts pleaded by Acuity, it is apparent none of the property damage alleged by the City in the underlying lawsuit occurred during the policy period. The City's complaint described degradation to the natatorium's steel stricture beginning in Summer/Fall 2015, and the third-party complaint by Samron brings causes of action against Marion Glass related to that damage. (Doc. 1 ¶ 29). Marion Glass informed Acuity that it had completed its work on the project by February 25, 2015. (*Id.* ¶ 32).

Even if the damage began or continued into the coverage period in December 2020, Acuity would not be under any duty to defend or indemnify Marion Glass because that damage would have been a known loss. The policy makes coverage contingent on whether the insured knew prior to the coverage period that "property damage had occurred, in whole or in part." (Doc. 1-3 p. 62). In its motion, Acuity argues that Marion Glass knew of any property damage when it purchased the insurance, so the loss therefore is uninsurable. For that proposition, it refers to paragraph 33 of its complaint, which states that "as of 2017, there were no issues with the windows installed by Marion Glass meaning that no damage occurred to the windows or that any such damage had already occurred and been remediated and, therefore, the alleged property damage did not occur during the Acuity policy period." (Doc. 1 ¶ 33). That allegation does not negate the possibility that Marion Glass *did not know* about any continuing property damage

when it purchased the insurance. More relevant to that question is paragraph 36, which states in relevant part that "even if the alleged property damage continued from when it was discovered in 2015 into the Acuity policy period incepting on December 30, 2020, any such damage would be considered a known loss discovered prior to the initial policy period." (*Id.* ¶ 36). Although the Court cannot accept as true the allegation's legal conclusion that the damage *was* a known loss under the policy, the Court can accept that the damage was "discovered prior to the initial policy period." (*Id.*). Acuity therefore has established that it has no duty to Marion Glass under the Business Liability coverage.

Next, Acuity avers that it has no duty to defend or indemnify Marion Glass under the policy's Errors and Omissions coverage. That provision "applies only if" the "[w]rongful act occurs . . . on or after the Retroactive Date shown in the Declarations." (Doc. 1-3 p. 152). The retroactive date is December 30, 2020. (*Id.* at p. 149). For the reasons previously discussed, any claim regarding damage to the City's natatorium arose before that date. Acuity therefore has established that it has no duty to defend or indemnify Marion Glass under the Errors and Omissions coverage.

Finally, Acuity denies that it owes any duty to Marion Glass under the policy's Commercial Excess Liability coverage. In that portion of the policy, Acuity agreed to "pay those sums, in excess of the amount payable under the terms of any *underlying insurance*, that the insured becomes legally obligated to pay . . . provided that the *underlying insurance* also applies . . . ." (Doc. 1-3 p. 6). "Underlying insurance" is defined by reference to a listing of policies set out in a "Schedule of Underlying Insurance." (*Id.* at p. 11). That schedule lists only an Automobile Liability policy, an Employers' Liability policy, and

the Business Liability policy (discussed above). (*Id.* at p. 4).

Acuity's duties under the Commercial Excess provisions are tied to whether another policy also is applicable. The Automobile Liability policy and the Employers' Liability policy clearly are irrelevant to the property damage alleged in the underlying complaint, and the Business Liability policy does not trigger a duty to defend or indemnify for the reasons previously mentioned. Acuity therefore has no duty to defend or indemnify under the terms of the Commercial Excess coverage.

### CONCLUSION

Accordingly, it is **ORDERED** that Acuity's Motion for Entry of Default Judgment (Doc. 31) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment as follows:

> Acuity owes no duty to defend or indemnify Marion Glass under the Business Liability, Errors and Omissions, or Commercial Excess Liability coverage provisions of Policy No. ZH5256 with respect to the underlying litigation among the City of Marion, Samron, and Marion Glass, styled *The City of Marion v. Baysinger Architects, LLC et al*, Case No. 2023 LA 52, pending in the Circuit Court for Williamson County, Illinois.

It is further **ORDERED** that the Clerk of Court shall **CLOSE** this case upon entry of the judgment.

**IT IS SO ORDERED.**

DATED:   February 18, 2026

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**